IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02512-CMA-MDB

BETTI BURKE,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant State Farm Mutual Automobile Company's ("State Farm") Motion for Partial Summary Judgment (Doc. # 59), wherein State Farm requests that the Court enter summary judgment in its favor on Plaintiff Betti Burke's claim for unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116. For the following reasons, the Court grants the Motion.

### I.     BACKGROUND[1]

On April 29, 2018, Ms. Burke was involved in a motor vehicle accident ("the Accident"). (Doc. # 8 at ¶¶ 6–7; Doc. # 60 at 1.) She was a restrained passenger in a parked vehicle which was struck by another vehicle. (Doc. # 8 at ¶¶ 6–7; Doc. # 60 at 1.) Ms. Burke did not seek medical care until 18 days later when she presented to a

---

[1] Unless otherwise specified, the following facts are undisputed.

chiropractor. (Doc. # 60 at 12–13; Doc. # 89-14.) However, Ms. Burke asserts that she suffered injuries as a result of the accident

> including, but not limited to, jaw pain, ear pain, neck pain, right shoulder pain, chest pain, right breast pain, left flank pain, back pain, hip pain, arm pain, bilateral elbow pain, numbness in the fingers, bilateral wrist pain, numbness and tingling in the upper extremity; tailbone pain, bilateral leg pain, right knee pain, right foot pain, numbness and tingling in the right calf, joint pain, headaches, blurred vision, sonophobia, depression, sleep disturbance, dizziness, and fainting spells, all resulting in mental and physical pain and suffering.

(Doc. # 8 at ¶ 12.) Ms. Burke settled with the at-fault driver, who is not a party to this litigation, for the limits of his $25,000 Safeway Insurance Agency ("Safeway") liability insurance coverage. (Doc. # 60 at 25–26.) At the time Ms. Burke was the insured under a policy issued by State Farm that provided underinsured motorist ("UIM") benefits in the amount of $100,000 per person. (*Id.* at 4.)

Nearly three months after the accident Ms. Burke presented to occupational and environmental medicine doctor, Thomas Higginbotham, DO. (*Id.* at 15.) At that time Dr. Higginbotham diagnosed Ms. Burke with contusion to right upper and lower extremities and flank, lateral hyper-flexion of the neck, contusion to the right hip and knee, and multiple musculotendinous strain patters to the right upper and lower extremity musculature. (*Id.* at 20.) Dr. Higginbotham examined Ms. Burke's right shoulder and found "near full" range of motion, as well as multiple "moderate" joint and muscular tenderness and guarding on her right upper extremity. (*Id.* at 18); *see also* (Doc. # 89-4 at 7; Doc. # 89-11.)

On March 26, 2019, after Ms. Burke had been released from her treating chiropractor for self-care, Dr. Higginbotham also released Ms. Burke from care. (Doc. #

2

60 at 21.) On this date Dr. Higginbotham noted that Ms. Burke's shoulder "is much better," that she was "at maximum therapeutic benefit," and that "[n]o surgeries are anticipated." (*Id.* at 21–22.) In a deposition taken on September 9, 2022, Dr. Higginbotham testified that he missed an appropriate evaluation of Ms. Burke's right shoulder in 2018 and March of 2019. (Doc. # 89-4 at 7, 15–16, 18.) At that time Dr. Higginbotham also testified that he attributes the rotator cuff tear to the Accident. (*Id.* at 13.)

In November 2019, Ms. Burke was referred to Dr. Devanny, an orthopedic surgeon, who diagnosed Ms. Burke with a rotator cuff tear. (*Id.* at 1–2.) Dr. Devanny performed surgery the following month. (*Id.*) Dr. Devanny's post-operative diagnoses included "[c]omplete rotator cuff tear or rupture of right shoulder, not specified as traumatic." (*Id.* at 24.) During Dr. Devanny's January 17, 2023 deposition, he testified that he did not personally enter this post-operative diagnosis, but rather it was computer generated or entered by a biller. (Doc. # 89-17 at 9.)

On October 16, 2020, Ms. Burke demanded the $100,000 of her UIM coverage from State Farm. (*Id.* at 27–36.) In her demand letter Ms. Burke claimed $35,399.70 in medical expenses, including the surgery for her right shoulder rotator cuff tear that she attributed to the Accident. (*Id*.) The following month, State Farm advised Ms. Burke that it had "questions concerning causation," requested five years of complete prior medical records, and notified Ms. Burke that it may request an independent medical examination. (*Id.* at 37.) State Farm also offered Ms. Burke $1,500 to resolve her UIM claim. (*Id.*) In response, Ms. Burke provided State Farm with six months of redacted

3

prior medical records which Ms. Burke asserts comprise "[a]ll relevant, unprivileged medical records" for the period requested. (Doc. # 89 at 4 citing (Doc. # 89-6 at 29–44; Doc. # 89-7 at 14; Doc. # 89-14 at 3; Doc. # 89-15; Doc. # 89-16.)) On November 24, 2020, noting that it was in receipt of records dating back only to February 2018, some of which were redacted, State Farm again requested five years of complete, unredacted prior medical records. (Doc. # 60 at 40.) Ms. Burke responded on December 17, 2020, rejecting State Farms $1,500 settlement offer and stating, "the records you have requested have nothing to do with the claim." (*Id.* at 41.)

On January 5, 2021, Ms. Burke provided State Farm with a letter from Dr. Higginbotham. (*Id.* at 42–49.) In this letter, Dr. Higginbotham opines that a November 2019 MRI of Ms. Burke's right shoulder produced results "consistent with a near full thickness tear of the rotator cuff," attributing this tear to the Accident. (*Id.* at 44–46.) State Farm's claims adjuster than requested information from the agency's medical resources department to better understand Ms. Burke's shoulder injury and treatment. (*Id.* at 50.) Based on this information, in early February 2021, State Farm notified Ms. Burke that it intended to move forward with a Utilization Review. (*Id.* at 55.)

Dr. Schwappach, who conducted a records review but did not perform an in-person examination of Ms. Burke (Doc. # 89-8 at 4), provided State Farm with a written report in which he concluded that the Accident did cause Ms. Burke's right upper extremity contusion and that all treatment up through March 2019 was reasonable to treat that injury. (*Id.* at 8–9.) However, Dr. Schwappach asserted that "clearly the shoulder partial thickness tearing and the shoulder tendinosis are not consistent with

4

the [Accident]." (Doc. # 60 at 60.) Dr. Schwappach went on to opine that Ms. Burke's

> rotator cuff injury and the need for surgery was not related to the
> [Accident]. There is no evidence to support this. The [November 2019]
> MRI scan is not consistent with an acute injury, and her initial examination
> done by Dr. Higginbotham on July 24, 2018, di [sic] not reveal acute
> rotator cuff pathology."

(*Id.*)[2] On March 11, 2021, State Farm notified Ms. Burke that "[b]ased on these findings, we are not considering the right should tear and its related surgery" in its UIM evaluation and reiterated its $1,500 settlement offer. (*Id.* at 62.) Subtracting the medical treatment for Ms. Burke's rotator cuff, State Farm calculated Ms. Burke's accident-related damages as $12,206 in medical treatments and $7,500 to $11,000 in general damages. (*Id*. at 65, 68.) In a letter dated April 9, 2021, Dr. Higginbotham "respectfully disagree[d] with Dr. Schwappach's opinion that the motor vehicle collision would not have resulted in rotator cuff pathologies as outlined in the MRI." (*Id.* at 72.)

State Farm reiterated its settlement offer on May 19, 2021, and August 12, 2021. (*Id.* at 74–75.) On August 16, 2021, Ms. Burke filed her Complaint in state court. (Doc. # 8.) She asserted two claims for relief: (1) breach of contract, and (2) statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and -1116. (*Id.*) On August 19, 2021, Ms. Burke reiterated her demand for the full limits of her UIM policy. (Doc. # 60 at 76.) State Farm removed the case to federal court on September 15, 2021. (Doc. # 1.)

On October 31, 2022, State Farm filed the instant Motion for Partial Summary Judgment arguing that Plaintiff's statutory bad faith claim fails as a matter of law

---

[2] Ms. Burke avers that this opinion is not sufficiently supported and relies on records which the authoring doctor later testified were erroneous. (Doc. # 89 at 5.) However, it is undisputed that this is the language of Dr. Schwappach's letter. (Doc. # 60 at 60.)

because there is no "genuine issue of fact that State Farm unreasonably delayed or denied a covered benefit without a reasonable basis, in violation of any industry standard." (Doc. # 59 at 2.) The matter is now fully briefed and ripe for review. The Court determines that summary judgment is the appropriate vehicle for resolving Ms. Burke's statutory bad faith claim.

## II. LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   DISCUSSION

State Farm argues that it is entitled to summary judgment on Ms. Burke's statutory claim for unreasonable delay or denial of insurance benefits on the basis that there is no evidence that it acted unreasonably. The Court agrees.

### A.   APPLICABLE LAW

Under Colorado law, statutory unreasonable delay or denial claims require a showing of unreasonable conduct. *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *5 (D. Colo. Sept. 30, 2021); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. 2015) (*Fisher I*) ("[T]he only element at issue in a statutory claim is whether an insured denied [or delayed] benefits without a

reasonable basis." (internal quotations and brackets omitted)), *aff'd by State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018) (*Fisher II*); *see* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.").

What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). Whether an insurer's conduct was reasonable is "determined objectively, based on proof of industry standards." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004). It is reasonable for an insurer to challenge claims that are "fairly debatable." *Zolman*, 261 P.3d at 496 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)). However, "an insurer cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1206 (D. Colo. 2022). The central question "is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim." *Bankr. Est. of Morris*, 192 P.3d at 523. An insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Savio*, 706 P.2d at 1275.

**B.     ANALYSIS**

State Farm argues that summary judgment is appropriate because there is no evidence that it acted unreasonably; rather, State Farm contends that the undisputed facts show that it promptly and reasonably acted to resolve Ms. Burke's claim and attempted to negotiate with her in good faith. (Doc. # 59 at 9–10.) Moreover, it argues its position that Ms. Burke's rotator cuff tear was not caused by the Accident—which the Court needs not determine to rule on the instant Motion—is supported by the evidence. (*Id.* at 10.) In particular, State Farm points to Ms. Burke's (1) declination to seek treatment until 18 days following the accident (Doc. # 60 at 12–13; Doc. # 89-14), (2) "near full" range of motion in her shoulder three months after the accident (Doc. # 60 at 18), and (3) discharge from both her chiropractor and Dr. Higginbotham in March 2019 with her shoulder feeling "much better" (*id.* at 21).

Ms. Burke's primary argument that State Farm acted unreasonably centers around her contentions that State Farm failed to engage in a reasonable, unbiased investigation into her claim and "cherrypicked small portions of [] medical records" to support its "preconceived notion that this [rotator cuff] tear was not accident related." (Doc. # 89 at 12, 14–15, 19–20.) In support of her allegations, Ms. Burke repeatedly raises two letters by Dr. Higginbotham (Doc. # 89-11 at 25–31, 45–48), her pre- and post-Accident Clinical Pain Pictures (*id.* at 1–2), and Dr. Devanny's notes (Doc. # 89-12 at 2–4) from his initial patient evaluation. (Doc. # 89 at 11, 14–15.) Ms. Burke also repeatedly points to Dr. Higginbotham's deposition testimony that he failed to appropriately evaluate Ms. Burke's shoulder in 2018 and 2019 (Doc. # 89-4 at 7, 15–16,

18), Dr. Devanny's deposition testimony that he did not personally enter the post-operative diagnosis code which characterizes Ms. Burke's shoulder injury as not traumatic (Doc. # 89-17 at 9), and the undated letter by Dr. Devanny (Doc. # 89-5 at 3) in which he also opines that Ms. Burke's rotator cuff tear was caused by the accident. (Doc. # 89 at 11, 20.) Ms. Burke also argues that any attempt by State Farm "to rely on a 'fairly debatable' defense to the claim" is further evidence of unreasonable conduct because "the Colorado Court of Appeals has made very clear that the issue of 'fairly debatable' has no bearing on whether a payment was unreasonably delayed or denied." (Doc. # 89 at 17.)

Initially, the Court notes that because both doctors' depositions were completed 13 months and 17 months, respectively, after Ms. Burke initiated this lawsuit, it is impossible for State Farm to have acted unreasonably by failing to consider their testimony in evaluating Ms. Burke's UIM claim from October 2020 to August 2021. The same is true regarding any causation opinions contained in Dr. Devanny's undated letter, submitted to State Farm in July 2022. (Doc. # 89-5 at 3.) The Court finds the deposition testimony and letter irrelevant to the instant Motion and rejects as disingenuous Ms. Burke's attempts to imply that this information bears on State Farm's reasonableness prior to the start of this litigation. The Court agrees with State Farm that the causation of Ms. Burke's rotator cuff tear is not at issue in the instant Motion. Rather, the only question is whether there are undisputed material facts demonstrating State Farm delayed or denied Ms. Burke UIM coverage without a reasonable basis. (Doc. # 59 at 2; Doc. # 90 at 1.)

When Ms. Burke's post-litigation evidence is put to the side, she is left relying on Dr. Devanny's November 2019 notes from his initial consult with Ms. Burke (Doc. # 89-12 at 2), two letters by Dr. Higginbotham dated June 15, 2020 (Doc. # 89-11 at 25–31), and April 9, 2021 (*id.* at 45–48), and her pre- and post-Accident Clinical Pain Pictures (*id.* at 1–2).[3] Dr. Devanny's notes appear to be a recitation of Ms. Burke's own account of the history of her shoulder pain—rather than a medical opinion regarding causation. (Doc. # 89-12 at 2.) The two letters by Dr. Higginbotham do opine that the Accident caused Ms. Burke's rotator cuff tear. (Doc. # 89-11 at 28, 47–48.) However, they stand in contrast to Dr. Higginbotham's previous medical records which do not describe an acute shoulder injury as would be typically expected from a traumatic tear. *See* (Doc. # 60 at 18, 20–22); *see also* (Doc. # 89-4 at 7; Doc. # 89-11.) Prior to Dr. Higginbotham's deposition, State Farm had no explanation for these inconsistent records. Additionally, Ms. Burke's pre- and post-Accident Clinical Pain Pictures show an increase in pain to her right shoulder, but importantly do not indicate that that area of her body was pain free prior to the Accident. (*Id.* at 1–2.) This makes the absence of medical records prior to February 2018 more problematic. *See* (Doc. # 60 at 37, 40–41; Doc. # 89-6 at 29-44.) Finally, the opinion of Dr. Schwappach (Doc. # 60 at 60), and information provided by State Farm's internal medical resource department (*id.* at 50) support State Farm's conclusion that the rotator cuff tear was inconsistent with Ms. Burke's presentation and

---

[3] Ms. Burke also cites to an April 11, 2021 letter by Dr. Higginbotham (Doc. # 89-11 at 57–61) in support of her argument that State Farm ignored relevant evidence. (Doc. # 89 at 14.) However, this letter is regarding injuries Ms. Burke sustained in a subsequent accident, one which occurred on August 14, 2020, and therefore is irrelevant to the instant Motion. *See* (Doc. # 89-11 at 57.)

symptoms following the Accident. (Doc. # 90 at 9–10.) Based on these undisputed material facts, the Court concludes that it was reasonable for State Farm to challenge Ms. Burke's claim for her rotator cuff injury and treatment as it was "fairly debatable" whether that injury was attributable to the Accident. *Zolman*, 261 P.3d at 496.

However, Ms. Burke also argues that the determination that an insurance claim is "fairly debatable" "has no bearing on whether a payment was unreasonably delayed or denied." (Doc. # 89 at 17–18 (citing *Vaccaro*, 285 P.3d at 759–60).) This recitation of the case law surrounding the determination that a claim was "fairly debatable" is inaccurate and misleading. First, the *Vaccaro* court was tasked with reviewing the trial court's denial of the insurer's motion for judgment notwithstanding the verdict in favor of the insured, which is "warranted only if a reasonable person could not reach the same conclusion as the jury." 275 P.3d at 760. In affirming the trial court's conclusion that the insurer had not made such a showing, the *Vaccaro* court concluded that the determination an insured's claim was "fairly debatable" "would not **alone** establish that defendant's actions were reasonable as a matter of law." *Id.* (emphasis added). Rather, the *Vaccaro* court went on to explain that, although a disagreement about the amount of damages alone does not amount to bad faith, "under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Id.* at 759 (quoting *Zolman*, 261 P.3d at 496). This is true even if judicial proceedings ultimately conclude the insurer was incorrect in its assessment of the compensability of the claim. *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). In summary, although fair debatability "weighs against a finding that the insurer acted unreasonably[,]" it "is not a

threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Id.* at 1217-18; *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016) ("[U]nder Colorado law, fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably.").

In the instant case, the undisputed material facts demonstrate that State Farm timely and reasonably responded to Ms. Burke's claim for UIM benefits. Within 30 days State Farm advised Ms. Burke that it had causation concerns and made a settlement offer. (Doc. # 60 at 137.) State Farm then reviewed the limited medical records Ms. Burke provided, which at the time included inconsistent records from Dr. Higginbotham, a recitation of Ms. Burke's own description of the history of her shoulder injury by Dr. Devanny, and a pre-Accident Clinical Pain Picture which indicated right shoulder pain. *See* (Doc. # 89-11 at 1; Doc. # 89-12 at 2); *compare* (Doc. # 60 at 18, 20–22); *with* (Doc. # 89-11 at 28, 47–48.) State Farm also sought additional information from its medical resources department and a records review by Dr. Schwappach. (Doc. # 60 at 50, 55, 60.) Given the information it had at the time, the Court concludes as a matter of law that it was reasonable for State Farm to determine Ms. Burke's rotator cuff tear and surgery were not covered by the policy and that the settlement she had received from Safeway was sufficient to account for her medical treatment and general damages attributable to the Accident. *See Peiffer v. State Farm, Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. 1996) ("An insurer's decision . . . must be evaluated based on the information before the insurer at the time of that decision."), *aff'd* 955 P.2d 1008 (Colo.

13

1998). Whether State Farm was ultimately mistaken in that determination is not at issue in the instant motion and will be determined by the jury at trial.

Ms. Burke makes two additional arguments that State Farm acted unreasonably. First, Ms. Burke attempts to argue that State Farm acted unreasonably by failing to issue the $1,500 settlement payment. (Doc. # 89 at 15 (citing *see Fisher I*, 419 P.3d 501, *aff'd Fisher II*, 418 P.3d 501).) However, the Court sees no evidence of undisputed benefits remaining in this case: Plaintiff does not dispute that without her rotator cuff treatment, her claimed medical expenses were $12,206.00 and that she received $25,000 from Safeway. (Doc. # 60 at 25–26, 65.) Although Ms. Burke continues to assert that State Farm "has completely ignored non-economic and physical impairment damages" (Doc. # 89 at 10), she has not pointed to any evidence that she has claimed or provided accounting for such damages and provides no explanation for why State Farm's assessment of $7,500 to $11,000 in general damages (Doc. # 60 at 68) is unsatisfactory. Because Ms. Burke's settlement with Safeway exceeded her undisputed medical bills, and the Court is not aware of other documented economic damages, the Court finds it to be an undisputed material fact that Ms. Burke's remaining damages are disputed. Therefore, the Court agrees with State Farm that Ms. Burke's claim is "fairly debatable" and, as such, State Farm did not act unreasonably by failing to issue payment. *See, e.g.*, *Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 662305, at *6 (D. Colo. Feb. 19, 2021) ("[U]nlike economic damages such as those associated with Plaintiffs' medical bills, there is no sum certain to which

an insured is entitled for non-economic damages, which is indicative of the fact that there was a 'legitimate dispute' over the value of such damages.").

Finally, Ms. Burke also asserts that State Farm acted unreasonably by "completely ignor[ing] non-economic and physical impairment damages." (Doc. # 89 at 10.) The Court sees no factual support for this argument, and Ms. Burke provides none. Indeed, it is unclear to the Court how State Farm could have entirely ignored Ms. Burke's noneconomic damages while simultaneously offering her settlement amounts in excess of her documented economic damages and third-party settlement. *See* (Doc. # 60 at 37, 62.)

The Court finds that Ms. Burke has failed to set forth any facts, let alone specific facts from which a rational trier of fact could find in her favor, suggesting that State Farm acted unreasonably under the circumstances. *Adler*, 144 F.3d at 671. Accordingly, the Court decides as a matter of law that State Farm did not act unreasonably. State Farm is entitled to summary judgment on Ms. Burke's statutory claim for unreasonable delay or denial of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendant State Farm Mutual Automobile Company's Motion for Partial Summary Judgment (Doc. # 59) is GRANTED.

- Accordingly, summary judgment shall enter in favor of State Farm and against Plaintiff Betti Burke on Ms. Burke's claim for unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116.

DATED: June 30, 2023

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge